Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL ESPECIAL[1]

| | | |
|---|---|---|
| **UNITED SURETY AND INDEMNITY COMPANY**<br><br>Parte Recurrida<br><br>v.<br><br>**VILLAS DE MONTELLANO ASSOCIATES, S.E. LTD.; LUIS TRIGO VELA; SU ESPOSA, FRANCES CÓRDOVA, Y LA SOCIEDAD LEGAL DE BIENES GANANCIALES COMPUESTA POR AMBOS; UBS FINANCIAL SERVICES INCORPORATED OF PUERTO RICO; INGENIERO MIGUEL L. NOGUERAS BARRANCO**<br><br>Parte Peticionaria | KLCE202300732 | **CERTIORARI**<br>Procedente del Tribunal de Primera Instancia, Sala Superior de San Juan<br><br>Caso Núm.:<br>**K AC2009-1195 (Salón 604)**<br><br>Sobre: Acción Civil |

Panel integrado por su presidenta la jueza Cintrón Cintrón, la juez Barresi Ramos y el juez Pérez Ocasio.

Pérez Ocasio, Juez Ponente

### RESOLUCION

En San Juan, Puerto Rico, a 21 de marzo de 2024.

Comparece ante nos, Luis Trigo Vela (Trigo Vela o peticionario), su esposa Frances Córdova (Córdova o peticionaria) y la Sociedad Legal Gananciales compuesta por ambos (SLG), solicitando que revisemos una *"Resolución"* del Tribunal de Primera Instancia, Sala Superior de San Juan, en adelante, TPI-San Juan, notificada el 21 de junio de 2021.

---

[1] Véase Orden Administrativa OATA-2023-131 del 14 de julio de 2023, donde se designa al Juez Alberto Luis Pérez Ocasio en sustitución de la jueza Camille Rivera Pérez.

En la misma, el Foro Primario denegó una *"Moción de Sentencia Sumaria"* presentada el 28 de enero de 2020 por el peticionario.

Por los fundamentos que expondremos a continuación, *denegamos el recurso solicitado.*

## I.

Según el recurso que ahora nos ocupa, los eventos que han producido la controversia del caso de marras tienen su génesis en la exposición de hechos que a continuación resumimos:[2]

Trigo Vela se dedicaba al desarrollo de propiedades, bajo un programa de subsidios federales para el desarrollo de viviendas. Villas de Montellanos Associates S.E., en adelante VMA, también se dedicaba al desarrollo de vivienda social bajo el mismo programa.

VMA contrató a White Construction Inc., en adelante White, como contratista de uno de sus proyectos. Sin embargo, la relación entre ambos desembocó en una demanda presentada el 24 de mayo de 1994, por VMA, por incumplimiento de contrato. White reconvino con una demanda en cobro de dinero. Eventualmente, White obtuvo una orden de aseguramiento de sentencia y embargo sobre la propiedad de VMA, el día 7 de marzo de 1996.

Para levantar el embargo, VMA necesitaba una fianza judicial, la cual le solicitó a San Juan Abstract Company, en adelante, SJAC. Esta compañía, que ofrece servicios de seguros por especialidad y títulos, se encargaba de manejar ciertos aspectos financieros del dinero provisto por los inversionistas del proyecto de VMA.

Posteriormente, Caribbean Limited Partnership, en adelante CLP, compró el proyecto de VMA. CLP, a su vez, contrató a Vivienda Social, Inc., en adelante VS, como "Completed Project Developer".

VS y VMA otorgaron un contrato de préstamo mediante el cual VS se obligó a proveer a SJAC un máximo de $885,750 del dinero que tenía en su cuenta de depósitos en garantía. De esta manera, se podía terminar el proyecto de VMA y garantizar la fianza a través el Certificado de

---

[2] Este insumo se recopiló de los hechos expuestos en la *"Moción de Sentencia Sumaria"* del peticionario, y de la *"Resolución"* de la cual se recurre. Apéndice del recurso, págs. 16-32; 105-164.

Depósito Núm. 1660000520. Por su parte, VS recibiría los frutos que generara el Certificado de Depósito.

A través de SJAC, VMA tramitó la fianza con United Surety and Indemnity Company, en adelante, USIC o recurrida, quien es una aseguradora financiera de Puerto Rico. USIC condicionó la fianza a que se proveyera una garantía de cien por ciento en efectivo, y se firmara un "General Agreement of Indemnity", en adelante, GAI. VMA firmó el GAI y, por conducto de SJAC, le entregó a USIC la posesión física del Certificado de Depósito, y le cedió a este los derechos sobre la cuenta del Certificado de Depósito en cuestión. USIC, además, aseguró su garantía con el documento "Assignment of Bank Account", en adelante, ABA. El 22 de septiembre de 1997 USIC expidió la Fianza Para Levantar Embargo Núm. 9747694, en adelante, Fianza 9747694, garantizando el pago de cualquier sentencia que recayera a favor de White hasta un límite de $800,000.00.

USIC no requirió ninguna otra cosa de VMA. USIC no solicitó que VS, ni los peticionarios firmaran un GAI. Además, tampoco indagó sobre la relación entre VMA y VS. Es decir, USIC desconocía que la corporación principal de la fianza era diferente a la corporación colateral.

Luego de un tiempo, los intereses en la cuenta del Certificado de Depósito dado a USIC en garantía comenzaron a bajar. Propulsada por VS, VMA se comunicó con USIC para sugerirle un cambio en la garantía dada a estos, por una más prometedora. Se propuso que se invirtiera el colateral de $800,000.00 que estaba en el Certificado de Depósito en una cuenta de valores en UBS Financial Services Incorporated of Puerto Rico, en adelante, UBS, que tendría acciones preferidas de First Bank. Además, la cuenta sería cedida a favor de USIC como garantía del cumplimiento de VMA con sus obligaciones si USIC tuviese que pagar alguna reclamación bajo la Fianza 9747694.

El 6 de octubre de 2003 USIC encargó al Sr. Trigo Vela, quien representaba a VMA, para que se abriera con UBS la cuenta de valores a favor de USIC por la cantidad de $800,000.00. A esos efectos, UBS creó la cuenta JX-Q3437-5S, con un balance de $800,000.00 en acciones preferidas de First Bank, a nombre de "Vivienda Social, Inc., Collateral Account for United Surety", en adelante, Cuenta Colateral. Finalmente, en el 2004 recayó sentencia en el caso de VMA y White.

Así las cosas, el 9 de junio de 2004 el TPI-San Juan desestimó la demanda de VMA y declaró con lugar la reconvención de White.

En consecuencia, el 28 de febrero de 2005 VS solicitó la autorización de USIC para retirar de la Cuenta Colateral cualquier cantidad en exceso de los $800,000.00, la cual fue concedida por USIC. Con dicha autorización UBS le permitió a Vivienda Social el retiro del exceso de $800,000.00.

Posteriormente, el 26 de junio de 2007, USIC y SJAC fueron notificados del mandamiento de ejecución de sentencia en el caso de VMA y White. Sin embargo, en vista de que no se había producido el pago garantizado con la fianza, en noviembre de 2008, el TPI-San Juan ordenó a USIC radicar copia del expediente de la fianza al Foro Primario. No obstante, el recibo de la entrega del Certificado de Depósito y el documento ABA no fue entregado con el expediente, pues USIC no disponía de él. Por esto, USIC se comunica con UBS, quienes le informan que la Cuenta Colateral es de VS, por lo que no le pueden entregar las acciones de esta. UBS le explica a USIC que estos no tienen un gravamen inmobiliario sobre la Cuenta Colateral.

Ante este cuadro fáctico, USIC le solicitó a SJAC que hablara con VMA en el 2009, para que estos informaran como pagarían la fianza. En este tiempo, comenzaron las conversaciones transaccionales con Trigo Vela, como representante de VMA. Durante estos esfuerzos, USIC le solicita a Trigo Vela y a Córdova que firmaran un GMI. Estos últimos se negaron.

El 29 de septiembre de 2009, USIC presentó la demanda en este caso contra VMA, el Sr. Trigo Vela, Vivienda Social, UBS y otros.[3] En su petitorio, USIC le solicitó al Foro Primario que, mediante órdenes a las partes peticionarias, facilitaran el acceso, disposición y retiro de las acciones en la Cuenta Colateral de VS, que tiene UBS.

El 18 de agosto de 2010, se radicó una *"Demanda Enmendada"* por primera vez.[4] Luego, el 19 de marzo de 2013, se

---

[3] Apéndice del recurso, pág. 1283.
[4] *Id.* pág. 1300.

radicó una *"Segunda Demanda Enmendada"*.[5] En las mismas, USIC alega haber sido inducido a error al permitir la sustitución del Certificado de Depósito por la cuenta de acciones en UBS.

En cuanto a Trigo Vela, USIC alega que el peticionario le hizo creer falsamente que podría disponer de las acciones de la Cuenta Colateral de ser necesario. Por ello, USIC solicitó que se declarara nulo el contrato que creó la cuenta de UBS. También, solicitó del Foro Recurrido que sostuviera el acuerdo verbal con Trigo Vela, y ordenara la restitución – con intereses – de los $800,000.00 depositados en la Cuenta Colateral.

Durante los próximos siete (7) años, las partes continuaron litigando la controversia y realizando descubrimiento de prueba.

Ahora bien, el 28 de enero de 2020, los peticionarios solicitaron que se dictara sentencia sumariamente, aduciendo, en esencia, que USIC fue temerario en su manejo del Certificado, por lo que sus pérdidas son producto de su negligencia.[6] Además, arguyeron que USIC no perfeccionó una garantía mobiliaria, por lo que no puede reclamar esta. También, planteó que la reclamación de daños en su contra, por la recurrida, está prescrita. Finalmente, plantea que el peticionario no puede ser sujeto a responsabilidad en el caso de epígrafe, basado en una conversación transaccional, pues sería contrario a lo establecido en la Regla 408 de Evidencia, 32 LPRA Ap. VI, R. 408.

En su moción, los peticionarios expusieron ciento cincuenta y cuatro (154) determinaciones de hechos que sustentaron con los siguientes documentos:

1. "Disbursement Instructions" de CLP del 5 de marzo de 1997.
2. "Loan Agreement" entre Miguel Nogueras y Luis C. Trigo, del 6 de febrero de 1997.
3. El ABA, del 13 de agosto de 1997.

---

[5] *Id.* pág. 1326.
[6] Apéndice del recurso, pág. 105.

4. El GAI del 2 de septiembre de 1997.

5. La "Fianza para Levantar Embargo" del 22 de septiembre de 1997.

6. Cheques de VS a SJAC, del 1997 y 1998.

7. "Orden sobre Aseguramiento de Sentencia", del 7 de marzo de 1996.

8. Comunicaciones por escrito, fax y correo electrónico entre las partes, desde 2003 al 2011.

9. "Claims Listing – Villa-8" de VMA, del 2 de julio de 2007.

10. Oferta de UBS a USIC para el cambio de acciones a First Bank del 17 de abril de 2009.

11. Estados de cuenta de VS del Banco R&G de los años 1998, 2001, 2002 y 2003.

12. Facturas de USIC a VMA de los años 1999-2003 y 2007-2008.

13. Estado de cuenta de UBS en abril del año 2005 y octubre del año 2007.

14. Las transcripciones de las deposiciones realizadas a:

    a. Duhamel Iglesias Cacho – Vicepresidente de USIC (16 de mayo de 2011).

    b. Miguel Nogueras Barranco – Presidente de VS (16 de mayo de 2011).

    c. Luis Trigo Vela – Presidente de Indeco Housing Corp. (17 de mayo de 2011).

    d. Pablo Dardet Hevia – Presidente de SJAC (18 de mayo de 2011).

    e. Nelson Rodríguez Fernández – Consultor financiero de UBS (19 de mayo de 2011).

    f. Frederick Millán Benítez – Presidente de USIC (20 de mayo de 2011).

    g. Carlos Irizarry Lozada – Tesorero y miembro de la Junta de Directores de USIC (8 de junio de 2011).

    h. Raúl Escudero Villetas – Corredor de Valores de UBS (27 de septiembre de 2011).[7]

El 14 de julio de 2020, USIC presentó su oposición a la sentencia sumaria.[8] Arguyó que, con relación a las alegaciones de admisibilidad sobre conversaciones transaccionales, los peticionarios levantan defensas afirmativas que no presentaron

---

[7] Actualmente trabaja para el Banco Santander, pero al momento de los hechos, fungía según descrito.

[8] Apéndice del recurso, pág. 54. Hacemos constar que del expediente que obra en autos, no surgen los documentos con los que la aquí recurrida sustentó su oposición.

oportunamente. También, argumentó que la Sociedad Legal de Bienes Gananciales compuesta por los peticionarios se benefició de la garantía en cuestión, por lo que Trigo Vela responde. Finalmente plantea que, por el contrario, la parte peticionaria es la que ha incurrido en conducta temeraria, al inducirlos a error con respecto al CD y las relaciones entre VMA y VS.

El 11 de septiembre de 2020, los codemandados presentaron una "*Moción Solicitando Desglose de la Oposición a Moción de Sentencia de USIC por Craso Incumplimiento con la Regla 36 y no Discutir el Derecho Aplicable y Mala Fe*".[9] Allí, argumentaron que las disposiciones de los Capítulos 8 y 9 de la Ley Núm. 208 de 17 de agosto de 1995, mejor conocida como la Ley de Transacciones Comerciales, 19 LPRA sec. 401 et al, no son de las defensas afirmativas enumeradas en la Regla 6.5 de Procedimiento Civil, supra, 32 LPRA Ap. V, R. 6.5.

Posteriormente, el 16 de junio de 2021, el Foro Primario emitió una *"Resolución"* declarando "No Ha Lugar" a la sentencia sumaria solicitada por el aquí peticionario.[10] En la misma, el TPI-San Juan hizo las siguientes determinaciones de hechos:

1. El 6 de febrero de 1997, Vivienda Social suscribió un acuerdo de préstamo con VMA y acordó prestarle hasta un máximo de $885,750.00 para garantizar la terminación del proyecto y para que el mismo se pudiera vender libre de gravámenes.

2. El "Loan Agreement" fue suscrito por el Sr. Miguel Nogueras Barranco y el Sr. Luis Trigo Vela como representantes de Vivienda Social, Inc. y Villas de Montellano Associates, S.E. Ltd, respectivamente.

3. Vivienda Social, Inc. accedió a que $800,00.00 fueran utilizados para garantizar la fianza judicial expedida a favor de VMA para levantar un embargo sobre la propiedad en la que se ubica el mencionado proyecto.

---

[9] Apéndice del recurso, pág. 33.
[10] *Id*. pág. 16.

4. El 2 de septiembre de 1997, la demandante United Surety and Indemnity Company y la codemandada Villas de Montellano Associates otorgaron un contrato titulado General Agreement of Indemnity.

5. El 31 de julio de 1997, RG Premier Bank expidió el Certificado de Depósito núm. 1660000520 por la cantidad de $800,000.00. Este se expidió a nombre de San Juan Abstract-Vivienda Social, Inc.

6. El 13 de agosto de 1997, el Sr. Pablo Dardet Hervia suscribió el Assignment of Bank Account con USIC y le cedió el Certificado de Depósito núm. 1660000520.

7. El 22 de septiembre de 1997, USIC expidió una fianza judicial a favor de Villas de Montellano Associates (VMA) en el caso civil núm. K AC1994-1608. La fianza fue para levantar un embargo y garantizar hasta el límite de $800,000.00 el pago de cualquier sentencia que recayera a favor de White Construction, SE quien había interpuesto Reconvención contra VMA.

8. La colateral de $800,000.00 fue el Certificado de Depósito (CD) propiedad de Vivienda Social, Inc. a favor de United Surety, el que fue sustituido por las acciones preferidas de FirstBank a través de la cuenta en UBS.

9. En el año 2003, el CD núm. 1660000520 fue depositado en una cuenta de valores administrada por la codemandada UBS Financial Services Incorporated of Puerto Rico, según acordado con el codemandado señor Trigo Vela.

10. En enero de 2009, la parte demandante intentó retirar el CD de la cuenta de valores para recuperar la suma de $800,000.00 que había prestado como indemnización en una acción civil.

Además, el TPI-San Juan expuso que *existía controversia* en los siguientes hechos:

1. Cuál es la relación del Sr. Luis Trigo Vela con VMA;

2. Cuál es la relación del Sr. Luis Trigo Vela con Vivienda Social;

3. Cómo fue que Trigo Vela impidió que se vendieran las acciones de la cuenta de UBS y si tenía la facultad de autorizar la venta de las acciones;

4. Cuáles eran las funciones, responsabilidades y facultades del Sr. Carlos Irizarry en USIC;

5. Si hubo comunicación alguna entre Trigo Vela y Carlos Irizarry de USIC referente al alegado cambio del colateral,

antes de que se utilizara el Certificado de Depósito para la compra de las acciones preferidas;

6. Si hubo acuerdo verbal entre USIC, Vivienda Social, VMA y/o Luis Trigo Vela para el cambio del Certificado de Depósito por acciones que posteriormente se depositaron en la cuenta de UBS;

7. De existir el acuerdo anterior, cuáles fueron los términos de dicho pacto y si USIC solicitó que se incluyera algún tipo de restricción a su favor en la cuenta de valores que se creó en UBS; qué restricción, si alguna, tenía la cuenta JX-Q3437-5S en UBS;

8. Si hubo acuerdo entre USIC, Vivienda Social, VMA y/o Luis Trigo Vela con relación al pago de intereses o dividendos que resultaban del Certificado de Depósito o de la cuenta en UBS;

9. En qué fecha se abrió la cuenta núm. JX-Q3437-5S en UBS denominada *Vivienda Social, Inc. Collateral Account for United Surety.*

Inconforme, Trigo Vela presentó una *"Moción Reconsideración"* el 6 de julio de 2021.[11] El 28 de julio de 2021, USIC presentó oportunamente su oposición a la solicitud de reconsideración.[12] Finalmente, el 31 de mayo de 2023, el foro recurrido notificó que denegaba la reconsideración solicitada.[13]

Ante este cuadro fáctico, el peticionario recurrió ante esta Curia el 30 de junio de 2023, mediante un recurso de *certiorari*. Luego de una prórroga concedida, mediante *"Resolución"* del 18 de agosto de 2023, la parte recurrida presentó su *"Memorando en Oposición a que se Expida el Auto de Certiorari",* el 5 de septiembre de 2023.

Con el beneficio de la comparecencia de ambas partes, procedemos a resolver.

---

[11] Apéndice del recurso, pág. 14.
[12] *Id.* pág. 2.
[13] *Id.* pág. 1.

## II.

### A. Certiorari

El *certiorari* es un recurso extraordinario mediante el cual un tribunal de jerarquía superior puede revisar discrecionalmente una decisión de un tribunal inferior. *Rivera et al. v. Arcos Dorados et al.*, 2023 TSPR 65, 212 DPR ___ (2023); *Torres González v. Zaragoza Meléndez*, 211 DPR 821, 846-847 (2023); *Caribbean Orthopedics v. Medshape et al.*, 207 DPR 994, 1004, (2021); *800 Ponce de León v. AIG*, 205 DPR 163, 174-175 (2020). Ahora bien, tal discreción no opera en lo abstracto. Con respecto a lo anterior y para revisar los dictámenes interlocutorios del Tribunal de Primera Instancia, la Regla 52.1 de Procedimiento Civil, 32 LPRA Ap. V, R. 52.1, dispone, en su parte pertinente, lo siguiente:

> El recurso de *certiorari* para revisar resoluciones u órdenes interlocutorias dictadas por el Tribunal de Primera Instancia, solamente será expedido por el Tribunal de Apelaciones cuando se recurra de una resolución u orden bajo las Reglas 56 y 57 de este apéndice o de la denegatoria de una moción de carácter dispositivo. No obstante, y por excepción a lo dispuesto anteriormente, el Tribunal de Apelaciones podrá revisar órdenes o resoluciones interlocutorias dictadas por el Tribunal de Primera Instancia cuando se recurra de decisiones sobre la admisibilidad de testigos de hechos o peritos esenciales, asuntos relativos a privilegios evidenciarios, anotaciones de rebeldía, en casos de relaciones de familia, en casos que revistan interés público o en cualquier otra situación en la cual esperar a la apelación constituiría un fracaso irremediable de la justicia. Al denegar la expedición de un recurso de *certiorari* en estos casos, el Tribunal de Apelaciones no tiene que fundamentar su decisión.
>
> [. . .]

Según se desprende de la citada Regla, este Foro Apelativo intermedio podrá revisar órdenes interlocutorias discrecionalmente, cuando se recurre de decisiones sobre la admisibilidad de testigos de hechos o peritos esenciales, asuntos relativos a privilegios evidenciarios, anotaciones de rebeldía o en casos de relaciones de familia o que revistan interés público, o en aquellas circunstancias en las que revisar el dictamen evitaría un irremediable fracaso de la

justicia, entre otras contadas excepciones. *Rivera et al. v. Arcos Dorados et al.*, supra; *Mun. de Caguas v. JRO Construction,* 201 DPR 703, 710-711 (2019).

Luego de auscultar si el recurso discrecional cumple con las disposiciones de la Regla 52.1 de Procedimiento Civil, *supra,* el tribunal procederá a evaluar el recurso a la luz de la Regla 40 del Reglamento del Tribunal de Apelaciones, 4 LPRA Ap. XXII-B, R. 40. La mencionada regla expone los criterios que esta Curia deberá considerar para ejercer sabia y prudentemente su decisión de atender o no las controversias ante sí. *Rivera et al. v. Arcos Dorados et al.*, supra; *Pueblo v. Rivera Montalvo,* 205 DPR 352, 372 (2020); *Torres Martínez v. Torres Ghigliotty*, 175 DPR 83, 96-97 (2008).

Así, la Regla 40 del Reglamento del Tribunal de Apelaciones, *supra,* funge como complemento a la Regla 52.1 de Procedimiento Civil, *supra. Torres González v. Zaragoza Meléndez,* supra. pág. 848 La precitada Regla dispone lo siguiente:

> El [T]ribunal tomará en consideración los siguientes criterios al determinar la expedición de un auto de *certiorari* o de una orden de mostrar causa:
>
> (A) Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos, son contrarios a derecho.
>
> (B) Si la situación de hechos planteada es la más indicada para el análisis del problema.
>
> (C) Si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia.
>
> (D) Si el asunto planteado exige consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados, o de alegatos más elaborados.
>
> (E) Si la etapa de los procedimientos en que se presenta el caso es la más propicia para su consideración.
>
> (F) Si la expedición del auto o de la orden de mostrar causa no causa un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.
>
> (G) Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia.

4 LPRA Ap. XXII-B, R. 40.

Sin embargo, ninguno de los mencionados criterios es determinante, por sí solo, para este ejercicio y no constituye una lista exhaustiva. *García v. Padró*, 165 DPR 324, 335 (2005). Por lo que, de los factores esbozados "se deduce que el foro apelativo intermedio evaluara tanto la corrección de la decisión recurrida, así como la etapa del procedimiento en que es presentada; esto, para determinar si es la más apropiada para intervenir y no ocasionar un fraccionamiento indebido o una dilación injustificada del litigio". *Torres Martínez v. Torres Ghigliotty*, supra, pág. 97. (Énfasis omitido).

Nuestro Tribunal Supremo ha expresado también que, de ordinario, el tribunal revisor "no intervendrá con el ejercicio de la discreción de los tribunales de instancia, salvo que se demuestre que hubo un craso abuso de discreción, o que el tribunal actuó con prejuicio o parcialidad, o que se equivocó en la interpretación o aplicación de cualquier norma procesal o de derecho sustantivo, y que nuestra intervención en esa etapa evitará un perjuicio sustancial". *Rivera y otros v. Bco. Popular*, 152 DPR 140, 155 (2000); *Zorniak Air Servs. v. Cessna Aircraft Co.*, 132 DPR 170, 181 (1992); citando a *Lluch v. España Service Sta.*, 117 DPR 729, 745 (1986).

### B. Sentencia Sumaria

El mecanismo de sentencia sumaria provisto en la Regla 36 de Procedimiento Civil de 2009, 32 LPRA Ap. V, R. 36, es un vehículo para asegurar la solución justa, rápida y económica de un caso. *Birriel Colón v. Econo y otros*, 2023 TSPR 120, 213 DPR ___ (2023); *Serrano Picón v. Multinational Life Ins.*, 2023 TSPR 118, 212 DPR ___ (2023); *Oriental Bank v. Caballero García*, 2023 TSPR 103, 212 DPR ___ (2023); *González Meléndez v. Mun. San Juan et al.*, 2023 TSPR 95, 212 DPR ___ (2023); *Acevedo y otros v. Depto. Hacienda y otros*,

2023 TSPR 80, 212 DPR ___ (2023); *Universal Ins. y otros v. ELA y otros*, 211 DPR 455, 471 (2023); *Segarra Rivera v. Int'l. Shipping et al.*, 208 DPR 964, 979 (2022). Dicho mecanismo permite a los tribunales disponer, parcial o totalmente, de litigios civiles en aquellas situaciones en las cuales no exista controversia material de hecho que requiera ventilarse en un juicio plenario, y el derecho así lo permita. *Oriental Bank v. Caballero García,* supra. Este mecanismo lo puede utilizar la parte reclamante o aquella parte que se defiende de una reclamación. 32 LPRA Ap. V, R. 36.1 y 36.2.

Mediante el mecanismo de sentencia sumaria, se procura profundizar en las alegaciones para verificar si, en efecto, los hechos ameritan dilucidarse en un juicio. *León Torres v. Rivera Lebrón,* 204 DPR 20, 42 (2020). Este cauce sumario resulta beneficioso tanto para el tribunal, como para las partes en un pleito, pues se agiliza el proceso judicial, mientras simultáneamente se provee a los litigantes un mecanismo procesal encaminado a alcanzar un remedio justo, rápido y económico. *Ramos Pérez v. Univisión*, 178 DPR 200, 214 (2010). Como se sabe, en aras de prevalecer en una reclamación, la parte promovente debe presentar prueba incontrovertible sobre todos los elementos indispensables de su causa de acción. Id.

Nuestro ordenamiento civil y su jurisprudencia interpretativa impone unos requisitos de forma con los cuales hay que cumplir al momento de presentar una solicitud de sentencia sumaria, a saber: (1) una exposición breve de las alegaciones de las partes; (2) los asuntos litigiosos o en controversia; (3) la causa de acción sobre la cual se solicita la sentencia sumaria; (4) una relación concisa, organizada y en párrafos enumerados de todos los hechos esenciales y pertinentes sobre los cuales no hay controversia sustancial, con indicación de los párrafos o las páginas de las declaraciones juradas u otra prueba admisible en evidencia donde se establecen estos

hechos, así como de cualquier otro documento admisible en evidencia que se encuentre en el expediente del tribunal; (5) las razones por las cuales se debe dictar la sentencia, argumentando el derecho aplicable, y (6) el remedio que debe ser concedido. Regla 36.3 de Procedimiento Civil, 32 LPRA Ap. V, R. 36.3; *Oriental Bank v. Caballero García,* supra; *Pérez Vargas v. Office Depot*, 203 DPR 687, 698 (2019).

Por otro lado, "la parte que desafía una solicitud de sentencia sumaria no puede descansar en las aseveraciones o negaciones consignadas en su alegación". *León Torres v. Rivera Lebrón,* supra*,* pág. 43. Por el contrario, quien se opone a que se declare con lugar esta solicitud viene obligado a enfrentar la moción de su adversario de forma tan detallada y específica como lo ha hecho la parte promovente puesto que, si incumple, corre el riesgo de que se dicte sentencia sumaria en su contra, si la misma procede en derecho. Id.

Al atender la solicitud, el Tribunal deberá asumir como ciertos los hechos no controvertidos que se encuentren sustentados por los documentos presentados por la parte promovente. *E.L.A. v. Cole*, 164 DPR 608, 626 (2005). Toda inferencia razonable que pueda surgir de los hechos y de los documentos se debe interpretar en contra de quien solicita la sentencia sumaria, pues solo procede si bajo ningún supuesto de hechos prevalece la parte promovida. *E.L.A. v. Cole*, supra, pág. 625. Además, al evaluar los méritos de una solicitud de sentencia sumaria, ***"el juzgador debe actuar guiado por la prudencia y ser consciente, en todo momento, que su determinación puede conllevar el que se prive a una de las partes de su 'día en corte', componente integral del debido proceso de ley"***. *León Torres v. Rivera Lebrón,* supra*,* pág. 44.

Sin embargo, la sentencia sumaria generalmente no procederá cuando existan controversias sobre hechos esenciales materiales, o si la controversia del caso está basada en ***elementos***

***subjetivos como intención, propósitos mentales, negligencia o credibilidad.*** *Acevedo y otros v. Departamento de Hacienda y otros*, supra; *Segarra Rivera v. Int'l. Shipping et al.*, supra, pág. 980.

Además, existen casos que no se deben resolver mediante sentencia sumaria ***porque resulta difícil reunir la verdad de los hechos mediante declaraciones juradas o deposiciones***. *Jusino et als. v. Walgreens*, 155 DPR 560, 579 (2001).

Esta curia reconoce que el Tribunal Supremo de Puerto Rico ha dispuesto que la complejidad de un caso, por sí sola, no impide que se dicte sentencia sumariamente. *Meléndez González et al. v. M. Cuebas*, 193 DPR 100, 120 (2015); *Segarra Rivera v. Int'l. Shipping et al.*, supra, pág. 981. Sin embargo, no es menos cierto que desde el año 1986, nuestro Alto Foro ha expresado que resolver sumariamente controversias que son muy complejas, puede resultar contrario a la adjudicación óptima de un caso. *Vera v. Dr. Bravo,* 161 DPR 308, 334 (2004); *PFZ Props., Inc. v. Gen. Acc. Ins. Co.*, 136 DPR 881, 914 (1994); *Cuadrado Lugo v. Santiago Rodriguez,* 126 DPR 272, 280 (1990); *Corp. Presiding Bishop CJC of LDS v. Purcell,* 117 DPR 714, 723 (1986*).* De manera específica, ha dicho que "no es aconsejable resolver sumariamente casos complejos […]". *PFZ Props., Inc. v. Gen. Acc. Ins. Co.*, supra, pág. 914. También lo ha descrito como contrario al "sano ejercicio de esta discreción". *Corp. Presiding Bishop CJC of LDS v. Purcell,* supra, pág. 723.

El Tribunal Supremo de Puerto Rico ha discutido los criterios que este Tribunal de Apelaciones debe considerar al momento de revisar una sentencia dictada sumariamente por el foro de instancia. *Roldán Flores v. M. Cuebas et al.*, 199 DPR 664, 679-680 (2018); *Meléndez González et al. v. M. Cuebas*, supra, págs. 118-119. Sobre ese particular, nuestro más Alto Foro señaló que:

> [E]l Tribunal de Apelaciones debe: (1) examinar *de novo* el expediente y aplicar los criterios que la Regla 36 de

Procedimiento Civil, *supra*, y la jurisprudencia le exigen al foro primario; (2) revisar que tanto la Moción de Sentencia Sumaria como su oposición cumplan con los requisitos de forma codificados en la referida Regla 36; (3) revisar si en realidad existen hechos materiales en controversia y, de haberlos, cumplir con la exigencia de la Regla 36.4 de Procedimiento Civil, 32 LPRA Ap. V, de exponer concretamente cuáles hechos materiales encontró que están en controversia y cuáles están incontrovertidos, y (4) de encontrar que los hechos materiales realmente están incontrovertidos, debe proceder a revisar *de novo* si el Tribunal de Primera Instancia aplicó correctamente el Derecho a la controversia.

*Roldán Flores v. M. Cuebas et al.,* supra, pág. 679.

Conforme a lo anterior, "nos encontramos en la misma posición que el Tribunal de Primera Instancia para evaluar la procedencia de una sentencia sumaria". *González Santiago v. Baxter Healthcare*, 202 DPR 281, 291 (2019). Por ello, nuestra revisión es una *de novo*, y nuestro análisis debe regirse por las disposiciones de la Regla 36 de Procedimiento Civil, *supra*, y su jurisprudencia interpretativa. Id.

**III.**

Los peticionarios nos solicitan que revisemos la negativa del TPI-San Juan de declarar con lugar su solicitud de sentencia sumaria. Conforme la norma estatutaria y jurisprudencial antes expuesta, hemos evaluado este recurso *de novo*. Nos resulta forzoso concluir que ***nuestra intervención, en esta etapa de los procedimientos, no resulta oportuna.*** Toda vez que el dictamen recurrido es sustancialmente correcto y los fundamentos de su determinación fueron basados en toda la prueba que tuvo ante sí.

De un análisis de la totalidad de la prueba, coincidimos con el foro de instancia en cuanto a que aún existen controversias que impiden disponer de este caso por vía sumaria. Justipreciamos que, de la conglomeración de los hechos, el expediente y los documentos que obran en autos, resulta claro que el caso es uno, a lo sumo,

complejo. También, hay controversias que versan sobre elementos subjetivos, como la temeridad y la negligencia. Además, una porción significativa de la prueba presentada por el peticionario en su moción para que se dicte sentencia sumaria, descansa en ocho (8) deposiciones. Nuestra jurisprudencia ha reconocido estas tres (3) apreciaciones como elementos que justifican no resolver una controversia de forma sumaria.

Además, en virtud de que la parte peticionaria no demostró que el presente recurso se encuentra entre las instancias contempladas en la Regla 40 del Reglamento del Tribunal de Apelaciones, la cual nos permite entender sobre el mismo, nos abstenemos de intervenir en el caso de epígrafe. Asimismo, es forzoso colegir que el foro impugnado no erró ni abusó de su discreción al declarar no ha lugar la solicitud de sentencia sumaria.

**IV.**

Por los fundamentos que anteceden, *denegamos expedir el auto solicitado.*

Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

La Jueza Cintrón Cintrón concurre sin opinión escrita.

LCDA. LILIA M. OQUENDO SOLÍS
Secretaria del Tribunal de Apelaciones